UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**GERALDINE DAVIS**,                    Case No. 5:10 CV 945

    Plaintiff,                    Judge John R. Adams

     v.                    REPORT AND RECOMMENDATION

**COMMISSIONER OF**
    **SOCIAL SECURITY**,

    Defendant.                    Magistrate Judge James R. Knepp II


**Introduction**

Plaintiff Geraldine Davis seeks judicial review of Defendant Commissioner of Social Security's decision to deny a period of supplemental security income (SSI). The district court has jurisdiction under 42 U.S.C. § 405(g).

This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(1). For the reasons stated below, the undersigned recommends the Commissioner's decision be affirmed.

**Factual Background**

*Medical Evidence*[1]

Plaintiff was admitted to the hospital from May 22 to 25, 2006 after complaining of excessive thirst, excessive urination, fatigue, and blurry vision. (Tr. 173). She was noted to be

---

[1] Because Plaintiff challenges only the ALJ's conclusions on her rheumatoid arthritis, she waives any claims regarding the ALJ's determinations on her diabetes and anemia. *See, e.g.*, *Swain v. Comm'r of Soc. Sec.*, 2010 WL 2294534, *5 (6th Cir.) (noting that failure to raise a claim in merits brief constitutes waiver). Therefore, the Court will focus on those records pertinent to her rheumatoid arthritis.

"noncompliant with her medications." (*Id.*). She had a "medical history of rheumatoid arthritis" and had "some joint pain[,] specifically in her right elbow with some swelling." (*Id.*). "Both her hands showed ulnar deviation with swelling and mild tenderness at the left metacarpophalangeal joint." (*Id.*). Her Rheumatoid factor was 206 and her ESR (erythrocyte sedimentation rate)[2] "was elevated at 53." (*Id.*). She complained of pain at night in her elbows, which were warm to the touch. (Tr. 183, 191). Her final diagnosis was new onset type 2 diabetes, severe anemia, rheumatoid arthritis with active synovitis,[3] and menorrhagia/fibroid uterus. (Tr. 174). Discharge notes indicate she was to see someone from rheumatology that day. (*Id.*). A progress note from May 25, 2006 states Plaintiff "will be starting on her husband's insurance as of June 1st – no need for Medicaid." (Tr. 182).

On September 7, 2006, Dr. William Wojno, a rheumatologist, examined Plaintiff. (Tr. 233-35). Dr. Wojno noted Plaintiff was diagnosed with rheumatoid arthritis in 1994 and "typical RA deformity." (Tr. 233). He noted Plaintiff had symptoms in her hands, both elbows, both shoulders, and both knees.  Plaintiff reported "[m]orning stiffness for hours", "some fatigue", and "[s]ome muscle aches on and off." (*Id.*). Dr. Wojno noted Plaintiff had been on Prednisone until 1999, and "[a]pparently by her history [she] has never been on a second line agent." (*Id.*). Dr. Wojno's physical examination found decreased range of motion in both wrists, both elbows, and left shoulder. He noted "[e]arly swan neck deformity"[4] and a left hand rheumatoid arthritis deformity greater than

---

[2] ESR is "the rate of settling of red blood cells in anticoagulated blood; increased rates are often associated with anemia or inflammatory states." STEDMAN'S MEDICAL DICTIONARY (27th ed. 2000).

[3] Synovitis is the inflammation of the lining of the joints. *Maple v. Apfel*, 14 F. App'x 525, 530 n.1 (6th Cir. 2001) (citing STEDMAN'S MEDICAL DICTIONARY 1392 (1976)); *see also* Tr. 34-35.

[4] Swan neck deformity is "hyperextension of the proximal interphalangeal joint with flexion of the distal interphalangeal joint of the finger." STEDMAN'S MEDICAL DICTIONARY (27th ed. 2000).

2

the right. (*Id.*). Dr. Wojno stated Plaintiff's grip strength was "okay" and her motor strength was 5/5.

(*Id.*). Dr. Wojno noted "[m]ost of the RA changes on exam were chronic" and he "[w]ould like to

avoid [P]rednisone" given Plaintiff's diabetes. (Tr. 233-34). He ordered laboratory testing to

determine treatment, which showed Plaintiff's ESR was 63. (Tr. 234, 237). Plaintiff had a follow

up appointment on September 21, 2006. (Tr. 232). Dr. Wojno's notes are difficult to read, but he

recommended Plaintiff follow up in two weeks. (*Id.*). There are no further treatment records from

Dr. Wojno.

In a December 2006 symptom report, Plaintiff stated she had pain and weakness and her

hands and feet swell. (Tr. 106). In response to what makes the symptoms better, Plaintiff reported:

"rest, brace, the medicine only last[s] for so long and the pain come[s] back." (Tr. 108). She reported

she had taken Nabumetone, which did "not really" work, but helped for four hours. (*Id.*).

On February 6, 2007, Dr. Yolanda Duncan, a state agency physician, performed a

consultative examination of Plaintiff. (Tr. 241-47). Plaintiff reported she was told in 1994 she had

rheumatoid arthritis in 75% of her body, it is hard for her to pick things up with her hands, and she

cannot lift more than a 2 liter bottle of fluid in her left hand.  (*Id.*). Plaintiff also told Dr. Duncan she

can sit for fifteen to twenty minutes before having to stand because of back pain and can stand for

ten minutes, but then develops ankle and knee swelling. (*Id.*). Regarding her physical examination

of Plaintiff, Dr. Duncan noted:

> Ulnar deviation of both hands. Synovial thickening over both wrists. Decreased
> range of motion in the wrists, and decreased range of motion in the ankles. . . . No
> cyanosis, clubbing or edema. Pulses are 2+ radial, cartotid, femoral, dorsalis pedis
> and posterior tibial.

(Tr. 246). Dr. Duncan found Plaintiff was able to pick up a coin or key with difficulty, and could

write, hold a cup, open a jar, button and unbutton, and open a door. (Tr. 242). Plaintiff's muscle

3

strength was 3/5 in her shoulders, elbows, and wrists, and 5/5 in her fingers, hips, and knees. (Tr. 241).  Her pinch was normal, but her grasp, manipulation, and fine coordination were abnormal. (*Id.*). Plaintiff's range of motion in her shoulders and wrists was reduced. (Tr. 242-43). Her range of motion in her elbows and  fingers was normal except for the distal interphalangeal joint, which was reduced. (*Id.*). Dr. Duncan diagnosed Plaintiff with rheumatoid arthritis, diabetes, high blood pressure, and anemia, and in her summary stated: "[Plaintiff] would have difficulty with work related physical activities such as sitting, standing, walking, lifting and carrying objects. Hearing and speech are normal. [Plaintiff] may have difficulty with traveling due to her rheumatoid arthritis, but would not have any difficulty following commands." (Tr. 247).

State agency physician Dr. Esberdado Villanueva reviewed Plaintiff's records on February 21, 2007. (Tr. 250-57). He opined that Plaintiff could lift or carry twenty pounds occasionally, and ten pounds frequently. (Tr. 251). He stated Plaintiff could stand or walk about six hours in an eight-hour workday, and sit about six hours in an eight-hour workday. (*Id.*). He limited Plaintiff to occasionally climbing ramps and stairs, and stated she could never climb ladders, ropes, or scaffolds or work around hazards. (Tr. 252, 254). Dr. Villanueva explained Plaintiff's handling (gross manipulation) and fingering (fine manipulation) were "limited to occasional bilaterally due to RA changes." (Tr. 253).

In March 2007, Plaintiff had oral surgery. (Tr. 260). Doctors noted secondary diagnoses of diabetes, iron deficiency anemia, and hypertension. (*Id.*). A treatment note on March 15, 2007 states Plaintiff has rheumatoid arthritis, is "not on any meds currently" and "needs . . . referral back to her rheumatologist". (Tr. 272). A March 16, 2007 progress note indicates Plaintiff has rheumatoid arthritis "(untreated)". (Tr. 271).

4

In October 2007, Dr. Kathryn Drew, a state agency physician, reviewed updated medical evidence and affirmed Dr. Villanueva's opinion. (Tr. 293).

In November 2007, Plaintiff had a blood transfusion based on severe anemia. (Tr. 295). Treatment notes indicate Plaintiff's medical history includes "RA, anemia, noncompliance with meds" (Tr. 298) and she was to take Tylenol for her rheumatoid arthritis as needed. (Tr. 301).

Records from Plaintiff's two blood transfusions in early 2008 (Tr. 414-32, 433-47, 600-20, 621-36) and emergency room visit in July 2008 (Tr. 376-97) contain no specific complaints about arthritis. (*See, e.g.* Tr. 414 ("The remainder of the physical examination is unremarkable.")). Rather, they occasionally mention a past history of rheumatoid arthritis (*see, e.g.*, Tr. 543) and once note "[t]he patient attributes [her anemia requiring transfusions] to heavy periods and rheumatoid arthritis." (Tr. 433, 621).  Several records reference a history of anemia, diabetes, and menorrhagia with no mention of rheumatoid arthritis. (*See, e.g.*, Tr. 580).

A note from a physical examination on August 13, 2008 states Plaintiff is able to perform activities of daily living and "able [to] get groceries." (Tr. 514). In September 2008, Plaintiff had a hysterectomy. (Tr. 316). Pre-operative notes mention "rheumatoid arthritis with joint limitations in her hands." (Tr. 489). Plaintiff did not report being on any medication for her arthritis. (Tr. 323). Post-operative assessments showed dorsiflexion and hand grasps were strong bilaterally, Plaintiff's extremities were normal, and she was able to walk without difficulty. (Tr. 343, 484, 502).

Records from March through August 2008 list Plaintiff's health insurance coverage as "HMO Health Ohio." (Tr. 391, 375, 428, 533, 579, 618).

In July 2009, Plaintiff reported to the Social Security Administration she took medication for her diabetes and high blood pressure, but did not list any medication for arthritis. (Tr. 152).

In September 2009, Plaintiff went to the emergency room complaining of dizziness.  (Tr. 449). She was diagnosed with anemia, dizziness, probable vertigo, and medication non-compliance was noted. (*Id.*). Notes from this visit do not mention arthritis symptoms or complaints, but rather just note a history. (*See, e.g.*, Tr. 461, 474 ("no new complaints, cont[inue] [prescription] pain control"), 488, 489). "HMO Health Ohio" is again listed as Plaintiff's insurance provider. (Tr. 477).

*Hearing Testimony*

Plaintiff testified she had previously been found disabled after a hearing in 1996. (Tr. 24-25). She received benefits for two years, but was cut off in 2000 due to an outstanding warrant regarding food stamp payments. (Tr. 25-28). Plaintiff satisfied the warrant in 2006. (Tr. 28).

Plaintiff is single and lives by herself in an apartment, which she pays for with a rental subsidy. (Tr. 36-37). She testified she doesn't have insurance and had not been to the Crystal Arthritis Center since September 2006 because they told her she couldn't come back without insurance. (Tr. 38). She stated her mother and daughter care for her, though she lives alone. (Tr. 36-38). Plaintiff gets treatment only for her diabetes from Dr. Clarence White. (Tr. 38). Dr. White knows about Plaintiff's arthritis, but is not prescribing her medication for it. Plaintiff testified: "They said the reason they can't give me Prednisone anymore, because they're afraid there's a high right of my sugar, make my sugar go high . . . . So, they advised me just to only take Tylenol." (Tr. 39). Plaintiff testified she takes Tylenol twice a day and "[i]t eases up a little bit. Then it makes me stiff." (Tr. 42). Plaintiff also wears a brace on her left wrist when it hurts. (Tr. 39-40). Plaintiff testified she cannot carry anything, can only stand for about five minutes before having to lay down because her back hurts, and cannot do any walking. (Tr. 40-41). She said she cannot sit for more than an hour without having to move around because of back stiffness. (Tr. 41). Plaintiff stated she is right-

6

handed, cannot do any dishes because of her left hand, does not do any cleaning, but does watch TV and uses a remote control. (Tr. 43).

A Medical Expert, Dr. Frank Cox, reviewed the records and testified "it appears that [Plaintiff] has rheumatoid arthritis and that is apparently a diagnosis that's been established for a long time." (Tr. 30). He expressed some inability to discuss the status of Plaintiff's arthritis based on the lack of treatment evidence:

- "I have a problem because, I, I'm not sure what kind of ongoing medical care program she's on." (Tr. 30);

- "That, but I don't know what treatment is she on for rheumatoid arthritis, that's an [e]minently treatable disease." (Tr. 31);

- "It, it just, I, I had, I have trouble, there's no clear picture." (Tr. 32);

- "Well, again, we don't know, we don't really know what the status is, that's what I'm, I'm not questioning the rheumatoid arthritis. I'm questioning what kind of treatment, because it is treatable and the treatment will control it in most cases, but we don't even know what treatment's been gotten, been given to her and what she's accepted." (Tr. 36).

He explained Plaintiff's sedimentation rates were elevated, which "means that there's an inflammatory process going on somewhere in the body" but "[i]t says absolutely nothing about what kind of process it is, rheumatoid arthritis would be one of them." (Tr. 33). He also explained the significance of the 2006 diagnosis of rheumatoid arthritis with active synovitis: "That is the, the lining of a joint, or the, the joint and the tendons coming up to it are covered by synovia, which act as lubricant." (Tr. 34-35). Dr. Cox also explained ulnar deviation:

over a period of time your little finger[s] will . . . all point towards the little finger and there . . . are deformities, usually swelling of the . . . joint in between the finger bones, first joint closest to the hand, that's the proximal interphalangeal joint and this is another carpal, because these are the metacarpals and this is the metacarpophalangeal joint, leading edge of a fist.

7

(Tr. 32). Dr. Cox also observed that Plaintiff exhibited ulnar deviation, but her fingers did not look swollen. (Tr. 35). He testified someone with active rheumatoid arthritis in both hands would have difficulty moving or manipulating objects. (Tr. 35).

Kevin Yi, a vocational expert (VE) testified a hypothetical person with the given restrictions and vocational profile could perform jobs such as cashier II, housekeeper/cleaner, and cafeteria attendant. (Tr. 46). In response to a question from Plaintiff's counsel, the VE testified if that person were limited to only occasional handling and fingering, those jobs would be eliminated. (Tr. 47). The VE also testified if a person were limited to handling frequently, but fingering occasionally, the person could perform jobs such as a cafeteria attendant, coin machine collector, and punch press machine operator. (Tr. 48). Again in response to a question from Plaintiff's counsel, the VE testified a sit or stand option would eliminate those jobs. (Tr. 49).

## Procedural Background

Plaintiff filed an application for SSI on November 1, 2006 alleging disability as of that date. (Tr. 91). Plaintiff's claim was denied initially and on reconsideration. (Tr. 51, 52). Plaintiff requested a hearing. (Tr. 62). An ALJ held a hearing on September 25, 2009, at which Plaintiff appeared with counsel and testified. (Tr. 20-50). Dr. Cox and the VE also testified. (Tr. 29-36; 44-49).

In a written decision dated November 18, 2009, the ALJ denied Plaintiff's disability claim. (Tr. 9-18). The ALJ found Plaintiff has severe impairments of diabetes mellitus, rheumatoid arthritis, and anemia and has

> the residual functional capacity to perform a range of light work as defined in 20 CFR 416.967(b). Specifically, she can lift, carry, push and pull 20 pounds occasionally and ten pounds frequently. She can sit for six hour and stand and/or walk for six hours in a normal workday. She cannot climb ladders, ropes, or scaffolds

8

but can occasionally climb ramps and stairs. She can occasionally balance, stoop, kneel, and crawl. She can frequently but not constantly handle and finger.

(Tr. 13-14). He then found there were significant jobs in the national economy Plaintiff could perform. Therefore, the ALJ found Plaintiff not disabled. The ALJ's decision became the final decision of the Commissioner following the Appeals Council's denial of review. (Tr. 1-5). *See* 20 C.F.R. § 416.1481. Plaintiff then filed the instant case seeking judicial review of the ALJ's decision on April 27, 2010. (Doc. 1).

## Standard of Review

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## Standard for Disability

Eligibility for SSI is predicated on the existence of a disability. 42 U.S.C. § 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any

9

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. §§ 416.920 – to determine if a claimant is disabled:

1.  Was claimant engaged in a substantial gainful activity?

2.  Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3.  Does the severe impairment meet one of the listed impairments?

4.  What is claimant's residual functional capacity (RFC) and can claimant perform past relevant work?

5.  Can claimant do any other work considering his residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy.  *Id.* The court considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is he determined to be disabled. 20 C.F.R. § 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

**Discussion**

Plaintiff raises two objections to the ALJ's decision:

1.      The ALJ and the Appeals Council erred when they failed to obtain additional medical expert testimony or, alternatively, a more recent consultative examination.

2.      The ALJ erred when he relied on [Plaintiff's] lack of medical treatment.

(Doc. 16, at 5, 10). For the reasons that follow, Plaintiff's objections are not well-taken.

### The ALJ's RFC Determination Was Supported By Substantial Evidence

Plaintiff argues the ALJ's RFC determination was flawed because given the limited treatment record, later record additions, her own testimony, and Dr. Cox's inability to fully evaluate her rheumatoid arthritis, the ALJ should have consulted another medical expert or ordered an additional consultative examination. Defendant contends the ALJ's decision is supported by substantial evidence.

A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). An ALJ must consider all symptoms and the extent to which those symptoms are consistent with the objective medical evidence. *Id.* § 416.929. An ALJ must also consider and weigh medical opinions. *Id.* § 416.927. When a claimant's statements about symptoms are not substantiated by objective medical evidence, the ALJ must make a finding regarding the credibility of the statements based on a consideration of the entire record. Social Security Ruling (SSR) 96-7p, 1996 WL 374186, *1.   A claimant's subjective complaints can support a claim for disability, but there must also be objective medical evidence in the record of an underlying medical condition. *Jones*, 336 F.3d at 475. Further, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination

11

of disability." *Id.* at 476 (citations omitted). On review, the Court is to "accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying." *Id.* (citation omitted). In reviewing an ALJ's credibility determination, the Court is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [claimant's testimony] are reasonable and supported by substantial evidence in the record." *Id.* at 476.

The ALJ found Plaintiff's rheumatoid arthritis was a severe impairment, but determined she retained the RFC to perform light work. (Tr. 13). The ALJ stated Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms" but found her complaints not fully credible. (Tr. 14). The ALJ relied on Plaintiff's "intermittent, sporadic treatment", daily activities, no medication side effects, non-compliance with medical advice, lack of treatment for rheumatoid arthritis, and ability to handwrite a letter despite claims of severe pain in her hands. (Tr. 15). The ALJ also stated he gave Dr. Duncan's opinion "little weight" because it was inconsistent with the later records. (Tr. 16).  The ALJ accepted Dr. Villanueva's opinions regarding lifting, carrying, pushing, pulling, sitting, standing, walking, and climbing "because those opinions are consistent with the objective evidence of record" but rejected Dr. Villanueva's limitation to occasional handling and fingering "because the evidence following Dr. Duncan's examination shows no abnormality in the hands." (*Id.*).

### *Daily Activities / Abilities*

An ALJ may consider a claimant's daily activities when evaluating pain and work-related limitations. 20 C.F.R. § 416.929(c)(3)(I). Additionally, "[t]he consistency of the individual's own statements" is relevant to credibility. SSR 96-7p, 1996 WL 374186, *5. "The adjudicator must

12

compare statements made by the individual in connection with his or her claim for disability benefits with statements he or she made under other circumstances[.]" *Id.*

The ALJ found Plaintiff's credibility undermined by inconsistencies between Plaintiff's description of her abilities and the case record. Specifically, the ALJ correctly found, in contrast to Plaintiff's testimony that her mother and daughter do everything for her, she was able to perform activities of daily living and do her own grocery shopping.  (Tr. 15, 514). The ALJ also noted she was described as "fairly active" and "[t]he medical evidence does not support a finding that her daily activities would be limited to the extent she alleged." (Tr. 15, 488). Finally, the ALJ found despite Plaintiff's claims of severe pain in her hands, she "was able to handwrite an extensive letter to the Social Security Administration regarding her symptoms." (Tr. 15, 104). These findings – combined with those discussed below – provide substantial evidence to partially discount Plaintiff's credibility.

### *Lack of Supporting Objective Medical Evidence*

Plaintiff argues the ALJ erred in relying in part on a lack of objective medical evidence. She argues there was objective medical evidence of her rheumatoid arthritis requiring the ALJ to obtain additional information, namely: 1) Dr. Duncan found increased sedimentation rates,  "which Dr. Cox explained was an indication of an inflammatory process" (Doc. 16, at 7 (citing Tr. 30, 33)); 2) Dr. Cox noted (pointing to Dr. Wojno's records and Dr. Duncan's findings) Plaintiff's difficulty using and deformity of her hands, bilateral ulnar deviation, bilateral synovial thickening, and swelling of the hand joints; 3) Dr. Cox observed that Plaintiff had symptoms of ulnar deviation at the hearing; and 4) Dr. Cox testified someone with active rheumatoid arthritis in both hands would have difficulty moving and manipulating objects.

13

The ALJ had substantial evidence to support his finding that "none of the clinical symptoms that Dr. Duncan found . . . were present at any subsequent physical examinations." (Tr. 16).  In September 2008, after Plaintiff's hysterectomy, clinical notes state her dorsiflexion and hand grasps were strong bilaterally and her extremities were normal. (Tr. 343, 502). Although Plaintiff had numerous medical procedures after Dr. Duncan's 2007 analysis, there are few references in any of her medical records to arthritis at all, much less complaints. (*See* Tr. 376-97,  414-32, 433-47, 449-78, 600-20, 621-36).  The ALJ also specifically explained his reason for rejecting Dr. Duncan's opinion: "I am not finding that Dr. Duncan did not observe what he recorded in his report, but I am finding that the remainder of the record establishes that the abnormalities he observed did not persist for any significant period of time." (Tr. 16). *See* 20 C.F.R. § 416.927(d)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").

Dr. Cox testified increased sedimentation rates "show[] that there's an inflammatory process going on somewhere in the body", but also stated "[i]t says absolutely nothing about what kind of process it is, rheumatoid arthritis would be one of them." (Tr. 33). The ALJ also recognized, as did Dr. Cox, that the records from Dr. Wojno and Dr. Duncan showed signs of rheumatoid arthritis. (Tr. 15-16). He explained, however, that he did not rely on these findings because "the remainder of the record establishes that the abnormalities [Dr. Duncan] observed did not persist for any significant period of time" and Plaintiff never followed up with Dr. Wojno. (Tr. 15-16).  Although Dr. Cox observed that Plaintiff exhibited ulnar deviation, he also noted her hands did not look swollen and he did not perform any physical examination of Plaintiff. (Tr. 35). Finally, in response to Plaintiff's counsel's question: "Would someone with this active rheumatoid arthritis in both of their hands have difficulty moving, manipulating objects?" Dr. Cox responded: "Yep, if it's active, uh-huh." (Tr. 35).

14

Dr. Cox did not testify Plaintiff's arthritis was active, and stated: "Well, again, we don't know, we don't really know what the status is". (Tr. 36). Dr. Cox never opined about Plaintiff's RFC.  These factors Plaintiff points to in arguing the ALJ was required to obtain additional medical expert testimony or a consultative examination do not show the ALJ lacked substantial evidence, but rather simply provide evidence Plaintiff has rheumatoid arthritis, something the ALJ also found. Although the facts Plaintiff points to provide support for her claim, the ALJ's decision must be upheld if it is supported by substantial evidence, even if substantial evidence also supports the opposite conclusion. *Jones*, 336 F.3d at 477.

An ALJ may not rely solely on a lack of objective evidence to reject claims of pain or other symptoms, but objective evidence is a "useful indicator" of "the intensity and persistence" of symptoms. 20 C.F.R. § 416.929(c)(2); *see also Moon v. Sullivan*, 923 F.2d 1175, 1183 (6th Cir. 1990) ("ALJ may distrust a claimant's allegations of disabling symptomatology if the subjective allegations, the ALJ's personal observations, and the objective evidence contradict each other."). As discussed above and below, the ALJ here also relied on Plaintiff's limited treatment, limited medication, and self-reported daily activities. It is ultimately Plaintiff's burden to prove she is disabled by providing a complete record. *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986). The ALJ therefore did not err in his finding that the objective medical evidence after Dr. Duncan's examination did not show Plaintiff to be so severely limited.

### *Lack of Treatment*

Plaintiff argues the ALJ erred in relying on her lack of treatment because she testified she did not have insurance (Tr. 38) and if she did, she would get treatment for her arthritis (Tr. 42).

"In the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that a claimant will seek examination or treatment. A failure to do so may cast doubt on a claimant's assertions of disabling pain." *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 846 (6th Cir. 2004). A Social Security Ruling, SSR 96-7p, 1996 WL 374186, *7, explains:

> [T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment prescribed and there are no good reasons for this failure. However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.

However, as Defendant points out, the record does not support Plaintiff's claim that she lacked insurance and could not get treatment for financial reasons. Plaintiff sought and received treatment for other conditions, but not for her rheumatoid arthritis and, as Defendant puts it "it is unclear why Plaintiff would be able to afford treatment for these conditions but not for rheumatoid arthritis." (Doc. 18, at 12). Additionally, hospital records indicate she was to start on her husband's insurance on June 1, 2006 (Tr. 182) and later records from 2008 and 2009 show "HMO Health Ohio" as her health insurance provider. (Tr. 375, 391, 428, 477, 533, 579, 618). The ALJ also specifically noted: "[T]here is no evidence she takes medication or has undergone diagnostic testing for [rheumatoid arthritis]." (Tr. 15). Finally, although Dr. Cox testified "there are a number of medications that are effective in rheumatoid arthritis [that] do not have the systemic problems that long standing Prednisone use has", the ALJ noted Plaintiff had not been on anything other than Tylenol. (Tr. 32-33, 16). Therefore, the ALJ did not err in considering Plaintiff's lack of treatment.

16

### *Rejection of Limitation to Occasional Handling and Fingering*

Plaintiff argues the ALJ's rejection of Dr. Villanueva's restriction to occasional handling and fingering was error. Plaintiff contends the ALJ's statement that "[t]here is no objective evidence contained in the record that supports these limitations" (Tr. 18) is incorrect. Defendant contends this finding is supported by substantial evidence. The ALJ acknowledged this restriction from Dr. Villanueva's opinion, but stated he rejected it because of

> all of the evidence relating to credibility factors discussed above including but not limited to the paucity of medical treatment sought, the lack of medications, the lack of treatment prescribed other than a recommendation to take over the counter Tylenol, and the lack of complaints or medical findings during the court of inpatient hospitalization.

(Tr. 16). These statements are supported by substantial evidence. As discussed above, Plaintiff's more recent hospital records show only passing references to a history of rheumatoid arthritis, and, despite multiple hospitalizations for other issues, no complaints made about the limiting effects of the arthritis. Additionally, other evidence in the record supports the ALJ's limitation to frequent, but not constant fingering and handling.  Plaintiff wrote a full-page handwritten statement, testified she used a remote control, and was able – even according to Dr. Duncan's statements, which the ALJ ultimately rejected as inconsistent with the remainder of the medical evidence – to pick up a coin and key with difficulty, and to hold a cup, open a jar, button and unbutton, zip, and open a door. (Tr. 15, 43, 104, 242).

### *Failure to Have Dr. Cox Consider Exhibit 10F*

Plaintiff argues the ALJ should have provided Exhibit 10F – which Plaintiff submitted after the hearing – to Dr. Cox for analysis. The ALJ explained:

> Following the hearing, Ms. Davis' attorney submitted Exhibit 10F. Dr. Cox did not see this document and it was not proffered to him. However, Exhibit 10F contains

17

> mostly duplicates of Exhibit 8F, which Dr. Cox did see. Therefore, there is no due process issue. The minimal evidence in Exhibit 10F that is not in Exhibit 8F has no bearing on the residual functional capacity contained herein.

(Tr. 16). Plaintiff objects to this analysis, stating: "While the ALJ stated there is no due process issue as many of the records in 10F were also in 8F and the new ones do not have a bearing on the residual functional capacity, this is better determined by a medical expert since it is required that all disability determinations be made based upon the record in its entirety." (Doc. 16, at 9). The ALJ is correct that Exhibit 10F is in large part duplicative of Exhibit 8F – hospital records from Akron City Hospital. (*Compare* Tr. 316-447 *with* Tr. 449-636). The primary difference between the two records is Exhibit 10F contains records from Plaintiff's September 2009 hospitalization (Tr. 449-78), blood work before Plaintiff's transfusions (Tr. 567-58, 607-08, 626), and some additional records from Plaintiff's hysterectomy (*Compare* Tr. 316-75 *with* Tr. 479-559).  Exhibit 10F does not contain any additional significant records of rheumatoid arthritis complaints or treatment, but rather simply the occasional passing reference to a history of rheumatoid arthritis. (*See* Tr. 461, 474, 488, 489). One record states, with respect to Plaintiff's rheumatoid arthritis: "no new complaints, cont[inue] [prescription] pain control" (Tr. 474) and a pre-operative note states "rheumatoid arthritis with joint limitations in her hands" (Tr. 489). The ALJ therefore had substantial evidence to conclude "the minimal evidence in Exhibit 10F that is not in Exhibit 8F has no bearing on the residual functional capacity." (Tr. 16).  Additionally, Plaintiff herself does not point to anything specific in Exhibit 10F that she alleges requires a more limited residual functional capacity finding. Because it is the ALJ, not a physician, who ultimately determines a claimant's RFC, this was not error. 20 C.F.R. § 416.927(e); SSR 96-5p, 1995 WL 374183, *5 ("The term 'residual functional capacity assessment' describes an adjudicator's finding about the ability of an individual to perform

18

work-related activities. The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence[.]").

### *Previous Finding of Disability*

Plaintiff testified she was awarded disability benefits in the 1996, which were stopped because of an unsatisfied warrant. (Tr. 23-25). She testified she believes her rheumatoid arthritis is now worse. (Tr. 43). Under *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842- (6th Cir. 1997), "a subsequent ALJ is bound by the findings of a previous ALJ . . . absent new and additional evidence." That is, a second ALJ is bound by the RFC determination of a previous ALJ. *Id.* Here, even though the ALJ did not have a copy of the previous decision (Tr. 23), and it is therefore impossible to tell if the prior RFC is more restrictive than the current RFC, the ALJ relied on sufficient evidence in the record from 2006 through 2009 – including Plaintiff's minimal treatment and few complaints – to conclude Plaintiff had "minimal physical impairment, and, hence, a potential basis to find 'functional improvement'" *See, e.g.*, *Collier v. Comm'r of Soc. Sec.*, 108 F. App'x 358, 363 (6th Cir. 2004) (quoting district court opinion and later holding: "Given the new medical evidence considered by the ALJ, there was substantial evidence to support an RFC for a restricted range of heavy work."). Thus, the ALJ was not bound by the previous ALJ's determination, even assuming it contained a more restrictive RFC.

### *Additional Medical Expert Testimony or Consultative Examination Was Not Required*

Plaintiff contends the state of the record, in conjunction with Dr. Cox's inability to opine as to Plaintiff's restrictions required the ALJ to call an additional medical expert or order an additional consultative examination. Under Social Security law,  "[t]he burden of providing a . . . record . . . complete and detailed enough to enable the Secretary to make a disability determination [] rests with

the claimant." *Landsaw*, 803 F.3d at 214. "[T]he regulations do not *require* an ALJ to refer a claimant to a consultative specialist, but simply grant him the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination." *Id.* The ALJ has the "discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (citing 20 C.F.R. § 416.917 ("If your medical sources cannot or will not give us sufficient evidence about your impairment for us to determine whether you are disabled or blind, we *may* ask you to have one or more physical or mental examinations or tests." (emphasis added)). Additionally, the regulations give an ALJ discretion to determine whether to consult a medical expert. 20 C.F.R. § 416.927(f)(2)(iii) (ALJ "*may* . . . ask for and consider opinions from medical experts on the nature and severity of [a claimant's] impairment§" (emphasis added)). "The primary function of a medical expert is to explain medical terms and the findings in medical reports in more complex cases in terms that the [ALJ], who is not a medical professional, may understand." *Fullen v. Comm'r of Soc. Sec.,* 2010 WL 2789581, *12 (S.D. Ohio) (citing *Richardson v. Perales*, 402 U.S. 389, 408 (1972)). The failure to order additional testing is, therefore, examined using an abuse of discretion standard. *Foster*, 279 F.3d at 355.

Here, the ALJ consulted a medical expert, who explained medical terms the ALJ did not understand – including sedimentation rate and synovitis (Tr. 32, 34) – and explained some of the findings in the record show rheumatoid arthritis (Tr. 32). Plaintiff does not explain how an additional medical expert could have contributed any more to the ALJ's decisionmaking process. The ALJ also had the benefit of a consultative examination in this case, that of Dr. Duncan, even if he ultimately determined Dr. Duncan's opinion was entitled to little weight.

20

Plaintiff argues "remand is warranted to allow for a new consultative examination or medical expert testimony with the benefit of the updated record" based, in part, on "the inability of the Medical Expert to opine on [Plaintiff's] condition because of lack of treatment and lack of access to her most recent treatment records." (Doc. 16, at 10). As discussed above, the ALJ did not err in relying on Plaintiff's lack of treatment, and the "lack of access to her most recent medical records" is, as noted above with regard to Exhibit 10F, not relevant to the RFC determination as determined by the ALJ.[5] Additionally, the fact that the medical expert did not offer an RFC determination is not error because it is the ALJ's duty, not a physician's to determine the RFC based on the evidence as a whole. 20 C.F.R. § 416.927(e); *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004).

There was substantial evidence in the record including reviewing physician Dr. Villanueva's RFC determination, which the ALJ adopted almost in its entirety, and some testimony from a medical expert interpreting the medical records, for the ALJ to evaluate Plaintiff's rheumatoid arthritis. The ALJ also specifically noted: "No treating medical source has offered an opinion that [Plaintiff] has limitations because of rheumatoid arthritis." (Tr. 15). The ALJ also properly evaluated Plaintiff's statements, and based on several factors discussed above, found her testimony regarding her restrictions not fully credible. The ALJ did not reject Plaintiff's diagnosis of rheumatoid arthritis, in fact, he found it to be a severe impairment. (Tr. 13). Although Plaintiff points out gaps in the record, it was her burden to present a complete record to the ALJ. *Landsaw*, 803 F.2d at 814. Plaintiff's disagreement is with the work limitations the ALJ found, but the ALJ's decision is

---

[5] Plaintiff references the newer and additional records in Exhibit 11F. However, "[w]hen the Appeals Council considers new evidence but declines to review the application for disability benefits, that evidence may not be considered as part of the record for purposes of the substantial evidence review." *Templeton v. Comm'r of Soc. Sec.*, 215 F. App'x 458, 463 (6th Cir. 2007) (citing *Foster*, 279 F.3d at 357).

supported by substantial evidence as discussed above.  Therefore, the ALJ did not abuse his

discretion in not obtaining additional medical expert testimony or a consultative examination.

***Remand is Not Required For Consideration of Exhibit 11F***

Lastly, Plaintiff argues remand is required under sentence six of 42 U.S.C. § 405(g) based

on Exhibit 11F, which was presented to the Appeals Council, but not to the ALJ. (*See* Tr. 4).

Defendant responds that Plaintiff fails to show the records satisfy the requirements for remand.

A reviewing court may remand a case for consideration of additional evidence "only upon

a showing that there is new evidence which is material and that there is good cause for the failure

to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *Sullivan v.*

*Finkelstein*, 496 U.S. 617, 626 (1990). Those requirements are defined as follows:

> For the purposes of a 42 U.S.C. § 405(g) remand, evidence is new only if it was "not
> in existence or available to the claimant at the time of the administrative
> proceeding." ... Such evidence is "material" only if there is "a reasonable probability
> that the Secretary would have reached a different disposition of the disability claim
> if presented with the new evidence." . . . A claimant shows "good cause" by
> demonstrating a reasonable justification for the failure to acquire and present the
> evidence for inclusion in the hearing before the ALJ.

*Foster,* 279 F.3d at 357 (citations omitted). "[T]he burden of showing that a remand is appropriate

is on the claimant." *Id.* (citation omitted).

Plaintiff simply argues, without explanation, that the records "satisfy the new, material and

previously unavailable for remand" and "[t]he most recent treatment notes contained in 11F are

dated after the ALJ's decision." (Doc. 16, at 9). Defendant argues Plaintiff has failed to show the

records are "new" or "material".

Exhibit 11F contains treatment records dated March 30, September 9, and November 20,

2009 from Internal Medicine Center. (Tr. 637-47). The records from March and September do not

22

satisfy § 405(g)'s "new" requirement. They existed at the time of the September 25, 2009 hearing, and Plaintiff has offered no argument that they were "not . . . available to [her]" at that time, nor has she offered any argument of "good cause" for failing to present them earlier. In fact, a progress note dated September 9, 2009 states "P[atien]t is here to make sure her disability paperwork gets completed. She needs it for an upcoming hearing." (Tr. 641). Although the November 2009 treatment notes are "new" within the meaning of the statute, Plaintiff has failed to show they are "material". Plaintiff argues the November 20, 2009 treatment note shows Plaintiff has "pain in all joints" and "a Rheumatoid Factor Blood of 233 and Total Protein of 9.9." (Doc. 16, at 9 (citing Tr. 638-39)). Plaintiff also notes that in this most recent record, she was prescribed Prednisone. (Tr. 639). However, Plaintiff has offered no argument for why this record establishes a "a reasonable probability that the [ALJ] would have reached a different disposition of the disability claim". *Foster*, 279 F.3d at 357 (citation omitted). That she was prescribed medication for rheumatoid arthritis is alone not enough because this was only one of the factors considered by the ALJ. Therefore, the undersigned finds a sentence six remand is not appropriate.

### Conclusion and Recommendation

Following review of the arguments presented, the record, and applicable law, this Court finds the Commissioner's decision denying DIB supported by substantial evidence and not contrary to law. As such, the Court recommends the Commissioner's decision be affirmed.

s/James R. Knepp II
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).